IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RENEE JOANN L.-L.,                        :
          Plaintiff,                        :                CIVIL ACTION
                                :
          v.                                :
                                :
FRANK BISGNANO,                           :                No. 23-cv-4558
          Defendant.                        :

**MEMORANDUM OPINION**

**CRAIG M. STRAW**                                              **February 26, 2026**
**United States Magistrate Judge**

Plaintiff Renee Joann Lowe-Littlejohn ("Plaintiff") seeks review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB). The parties consented to proceed before a Magistrate Judge,[1] and the matter was assigned to me.[2] For the following reasons, I grant Plaintiff's request for review, vacate the Commissioner's decision, and remand the case for further proceedings.

I.    **PROCEDURAL HISTORY**

Around March 30, 2021, Plaintiff filed an application for DIB under the Social Security Act (SSA), alleging a disability onset date ("AOD") of November 4, 2019. R. 76, 78, 192, 195, 202. The claim was denied initially on July 8, 2021, and then again on reconsideration. R. 90-92, 100, 102, 115, 117. Plaintiff filed a written request for a hearing before an ALJ. R. 121, 141.

---

[1] See Doc. 13; 28 U.S.C. § 636(c)(1) & Fed. R. Civ. P. 73(a).
[2] This case was originally assigned to Magistrate Judge Richard A. Lloret but was reassigned to me on May 16, 2024. Doc. 11.

1

On July 15, 2022, a telephone hearing occurred before Administrative Law Judge (ALJ) Nycole Watson because of the Covid-19 pandemic.  R. 40, 49.  Plaintiff testified at the hearing and appeared with her counsel, Gabrielle Muller, Esquire.  R. 23, 47, 49-50.  Vocational Expert (VE) Irene Montgomery also testified at the hearing.  R. 23, 49, 70-75.

The ALJ denied benefits.  R. 40.  Plaintiff sought review of the ALJ's decision with the Appeals Council, and the request was denied.  R. 1.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security.  R. 2-3; 20 C.F.R. § 404.981.  David Chermol, Esquire, then filed this action for Plaintiff in federal court.  Doc. 1.  Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  Doc. 8.  Defendant filed a Response to Request for Review of Plaintiff.  Doc. 9.  Plaintiff filed a Reply Brief.  Doc. 10.

## II.     LEGAL STANDARDS

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1.    Whether the claimant is currently engaged in substantial gainful activity;

2.    If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.    If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments (Listings), see 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity (RFC) to perform their past work; and

5.      If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform based on the claimant's age, education, and work experience.

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national economies based on their age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007) (citations omitted).

Generally, the court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 102-03 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)).

The Court has plenary review over all legal issues.  See Schaudeck, 181 F.3d at 431; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983) (stating even if substantial evidence supports factual findings Court may review whether decision was "made upon correct legal standards.").

3

**III.    THE ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW**

The ALJ determined that Plaintiff acquired sufficient quarters of coverage to remain insured through December 31, 2025.  R. 23, 25.  The ALJ found Plaintiff had not engaged in any substantial gainful activity since the AOD.  R. 25.  The ALJ determined that Plaintiff had severe physical impairments including cervical and lumbar degenerative disc disease, degenerative joint disease of the right knee, morbid obesity, osteoarthritis of the right ankle, status post Achille's tendon surgery, chronic pain syndrome, and migraines.  R. 25-26; 20 C.F.R. § 404.1520(c).  The ALJ also found other non-severe impairments including a vitamin deficiency, hypertension, hyperlipidemia, and a thyroid nodule.  R. 26.  The ALJ did not discuss any of Plaintiff's mental impairments at step two.  R. 25-26.  Nor did the ALJ discuss the Paragraph B[3] criteria.  R. 26-29.  The ALJ decided that Plaintiff's physical impairments, either singly or in combination, did not meet or medically equal any of the Listings. R. 26-29; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Considering the entire record, the ALJ found that Plaintiff had the RFC to perform sedentary work except she could occasionally lift, carry, push and/or pull ten pounds and frequently lift, carry, push and/or pull five pounds.  R. 29.  She could stand and/or walk for a total of about two hours in an eight-hour workday.  Id.  Plaintiff could occasionally climb ramps and stairs, and balance, stoop, or crouch.  Id.  She could never climb ladders, ropes, or scaffolds, and crawl or kneel.  Id.  Plaintiff could frequently handle, finger, and feel.  Id.  She also must

---

[3] See 20 C.F.R. pt. 404, subpt. P, app. 1.

avoid concentrated exposure to hazardous machinery, unprotected heights, humidity, vibration, and extreme cold.  Id.  The ALJ did not include any other limitations in Plaintiff's RFC.  Id.

The ALJ determined Plaintiff could perform past relevant work as a financial institution manager and a regional financial institution manager because this work did not require her to perform work-related activities that the RFC precludes.  R. 39.  Plaintiff was able to perform her past work as generally performed.  R. 39-40.  Therefore, the ALJ found that Plaintiff was not disabled.  R. 40.

Plaintiff includes two claims in her request for review.  Doc. 8, at 3-13.  First, she asserts remand is required because the ALJ failed to address Plaintiff's mental impairments during the sequential evaluation process.  Doc. 8, at 3-6.  Second, Plaintiff argues remand is necessary because the ALJ mischaracterized mental medical opinion evidence regarding her.  Id. at 3, 7-13. Conversely, the Commissioner contends the ALJ evaluated the four areas of functioning for mental impairments, and the decision Plaintiff did not have a severe mental impairment is supported by substantial evidence.  Doc. 9, at 2, 10-14.

## IV.    FACTUAL BACKGROUND

Plaintiff sought disability benefits primarily based on her physical impairments; however, she refers to mental impairments in her filings, and there is evidence of mental impairments in the record.  R. 78, 81-82, 93, 95-96, 102.  Because the issues Plaintiff raises concern only her alleged mental impairments, I focus on the evidence and facts in the record regarding those mental impairments.

Plaintiff was born in 1969.  R. 77.  She was therefore an individual closely approaching advanced age at the AOD.  R. 30, 54, 77.  Plaintiff attended three years of college.  R. 56, 229.

Plaintiff worked as a financial institution branch manager for several years.  R. 39, 230.  She then became regional financial institution manager earning $125,000 per year until she stopped working and sought disability benefits in 2021.  R. 39, 65, 229-30, 237-38.

Plaintiff in her initial application sought DIB for "chronic low back pain arthritis; chronic arthritis pain in both knees, right knee worst; meniscus tear and chronic arthritis in right knee; Achilles right ankle 3 surgeries since 2017; [c]hronic [h]eadaches/migraine, tension; **depression as result of being in pain and no longer worki[ng]**; obesity; high blood pressure; high cholesterol."  R. 29, 78 (emphasis added).  As to mental impairments, the initial disability determination explanation ("DDE") states Plaintiff "[a]lleges depression/anxiety," but provided a 4/20/21 Front and Olney Internal Medicine examination found no depression or anxiety.  R. 82; 102.  The DDE at the reconsideration level listed her impairments as depression and anxiety, among others, and specifically cited "mental disorders" of "depressive, bipolar, and related disorders" as a medically determinable impairment (MDI) that is classified as "non severe."  R. 95-96.  It explained MDIs are present but did not precisely satisfy the criteria of Listing 12.04 and found that Plaintiff only had mild impairments in understanding, remembering and applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself.  R. 96.  The psychiatric reviewing technique ("PRT") section noted Plaintiff takes Zoloft.  Id. at 96-97.

There are other references to Plaintiff's anxiety and depression in the record.  Plaintiff treated at the Center for Interventional Pain & Spine for treatment of her physical ailments, including Achilles repair and heel spur resection, from April 2020 to June 2021.  R. 332-93. Visit notes from that time indicate Plaintiff had a depressed mood.  R. 334, 341, 350, 356, 361,

6

366, 373, 378.  Other February 5, 2021 progress notes from a doctor visit for knee pain refer to

Plaintiff's past medical history of anxiety.  R. 400.  A routine check-up from April 2021

indicated Plaintiff has generalized anxiety disorder (chronic, stable) and Plaintiff was to continue

taking Zoloft.  R. 577.

Plaintiff's April 22, 2021 Adult Disability Report listed one of her medical conditions as

"depression as a result of being in pain and no longer working."  R. 228, 235.  Plaintiff did not

list any treatment or future appointments for this condition.  R. 231.[4]

Consultative examiner ("CE") Anne M. Greenberg, M.D.'s October 28, 2021 report

provided Plaintiff has a "long history of anxiety for which she takes Zoloft."  R. 685.  The report

also stated Plaintiff "has more recently developed significant depression since she has been

unable to return to work since the second [Achilles] surgery."  Id.  Plaintiff was not receiving

any mental health therapy.  Id.  The report includes anxiety as a diagnosis for Plaintiff with

"[r]ecent onset of depression."  R. 688.

Beau Brendley, Psy.D., conducted a mental status evaluation of Plaintiff on January 31,

2022.  R. 738.  The evaluation noted Plaintiff had not attended inpatient or outpatient mental

health treatment.  Id.  At the exam, Plaintiff reported depressive symptoms such as sad mood,

guilt, hopelessness, irritability, fatigue, worthlessness, low self-esteem, and social withdrawal.

Id. at 739.  Plaintiff was cooperative, had adequate matter of relating, coherent and goal directed

thought processes, full range and appropriate affect, and okay mood with good judgment.  Id. at

739-40.  The recommended treatment was individual psychological therapy with a fair prognosis

---

[4] Plaintiff later stated in the report that her primary care physician treated/evaluated her "depression/anxiety."  R. 232.

provided treatment recommendations were followed.  Id. at 741.  Plaintiff was diagnosed with other specified depressive disorder.  Id.

The same day, Dr. Brendley completed a Medical Source Statement ("MSS") of Ability to Do Work-Related Activities (Mental).  Id. at 742.  Plaintiff was found to have mild limitations understanding, remembering and carrying out instructions, and interacting appropriately with supervisors, co-workers, and the public.  Id.  Plaintiff has no limitations on her ability to concentrate, persist, and maintain pace and ability to adapt or manage herself.  Id. at 743.

Primary care office notes from March 11, 2022 listed generalized anxiety disorder (GAD) in the assessment/plan section and provided Plaintiff should "continue with sertraline currently on 200 mg daily."  R. 758.[5]

At the July 2022 hearing, Plaintiff testified she was not in treatment for mental health issues.  R. 60.  The ALJ also asked Plaintiff if she had been in treatment for mental health issues since 2019 and she answered no but said at some point her doctor "upped" her Zoloft dosage.  R. 61.  The record indicates that Plaintiff has a history of anxiety and has been taking Zoloft for several years.  R. 231-32, 258, 333, 399, 403, 427, 649, 685-86, 710, 716, 723, 730, 772, 776, 790.

---

[5] I point out that while certain parts of the record show Plaintiff reported depressed mood, other parts indicate Plaintiff was not depressed or anxious.  Compare R. 401, 405, 415, 419, 433, 445, 567, 569, 572, 575, 637 with R. 590, 599, 604, 610, 615, 642, 650, 705, 711, 717, 724, 792, 811.

**V.    DISCUSSION**

   **A. The ALJ erred when she did not consider Plaintiff's mental impairments of depression and anxiety at step two, and also failed to discuss those impairments at step five when assessing Plaintiff's RFC.**

   Plaintiff argues that remand is required because the ALJ failed to assess Plaintiff's mental impairments throughout the sequential evaluation process.  Doc. 8, at 3-6; Doc. 10, at 2-4.  This Court agrees.

   1. **Step two**

   At step two of the sequential process, the ALJ must determine whether the claimant has a medically severe physical or mental impairment or combination of impairments.  Salles v. Comm'r of Soc. Sec., 229 Fed. App'x 140, 144 (3d Cir. 2007); see 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c).  An impairment is severe only if it "significantly limits the claimant's physical or mental ability to do basic work activities."  Salles, 229 Fed. App'x at 144 (citation omitted).  In addition to severe impairments, the ALJ must consider at step two all of claimant's medically determinable impairments, regardless of severity.  Hammond v. O'Malley, 735 F. Supp. 3d 567, 579 (E.D. Pa. 2024) (citations omitted).  A medically determinable impairment must be shown by "objective medical evidence."  Roldan v. Kijakazi, 21-cv-621, 2023 WL 2567988, at *10 (M.D. Pa. Feb. 28, 2023) (citing 20 C.F.R. § 404.1521).  Once a mental impairment is found, the ALJ must then analyze whether certain medical findings are present or absent regarding claimant's ability to work.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing 20 C.F.R. § 404.1520a(d)).  The ALJ "must rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work."  Id.;  20 C.F.R. §§ 404.1520a(b)(2), 404.1520a(c)(3) (Paragraph B criteria); see Melendez v. Colvin, No. 15-cv-

9

4719, 2016 WL 4764819, at *4-*6 (D.N.J. Sept. 12, 2016) (remanding case when at step two ALJ did not sufficiently cite or discuss evidence of claimant's medically determinable impairment of major depression and how Paragraph B criteria applied because flaws impaired court's ability to review ALJ's conclusion).

Any doubt as to whether the step two showing has been met must be resolved in favor of the applicant. Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (citation omitted). The severity screening at step two is simply "a de minimis screening device to dispose of groundless claims." Id. at 547.

An ALJ's failure to acknowledge the existence of a medically determinable impairment at step two despite repeated references to the impairment in the record "deprives the Court of the ability to satisfy itself of the substantial evidence standard" and requires remand. Hammond, 735 F. Supp. 3d at 579; Pedro G. v. Dudek, No. 22-cv-5377, 2025 WL 559809, at *6 (D.N.J. Feb. 20, 2025) (remanding case when ALJ did not mention at step two claimant's learning disorder, which state agency consultants found was severe impairment, and when ALJ did not consider whether learning disorder was medically determinable impairment or consider it in RFC); Susan W. v. Kijakazi, No. 22-cv-05765, 2023 WL 6366043, at *6 (D.N.J. 2023) (finding ALJ decision was not supported by substantial evidence when ALJ failed to consider claimant's tinnitus, hearing loss, and TMJ—established by objective medical evidence—at step two because even if those impairments were non-severe and did not significantly limit Plaintiff's ability to perform basic work activities ALJ was obligated to discuss severity of impairments (if any) and functional limitations they impose on RFC).

In this case, the ALJ failed at step two to consider whether Plaintiff had a medically severe mental impairment or a medically determinable mental impairment as the sequential process requires.[6] See Zirnsak, 777 F.3d at 611; 20 C.F.R. § 404.1520(a)(4); see also Salles, 229 Fed. App'x at 144; Hammond, 735 F. Supp. 3d at 579. The ALJ only discussed Plaintiff's severe physical impairments such as her cervical and lumbar degenerative disc disease, degenerative joint disease of the right knee, morbid obesity, osteoarthritis of the right ankle, status post Achille's tendon surgery, chronic pain syndrome, and migraines. R. 25-26. The ALJ also found that Plaintiff had other "non-severe" impairments such as vitamin deficiency, hypertension, hyperlipidemia, and a thyroid module. R. 26. At no point at step two, however, did the ALJ mention Plaintiff's anxiety or depression or assess these impairments to consider whether they were severe impairments or, if not, whether they were medically determinable impairments. R. 25-29. The ALJ also failed to assess Plaintiff's mental impairments using the Paragraph B criteria. R. 25-29. The ALJ's failure to discuss and assess these mental impairments at step two—despite evidence in the record of these impairments[7]—was legal error. See Schaudeck, 181 F.3d at 431; Friedberg, 721 F.2d at 447; R. 78, 96-97, 232, 577, 685, 739-

---

[6] The Commissioner asserts, in part, that Plaintiff did not base her disability application on her mental impairments and only mentioned her physical impairments to the CE and ALJ at the hearing. Doc. 9, at 1, 9. The record is clear, however, that Plaintiff based her disability application on both her physical and mental impairments. R. 78, 81-82, 95-96, 102, 228, 235.

[7] The Court does not decide whether Plaintiff's mental impairments are severe or medically determinable impairments, only that it was error based on this record for the ALJ not to perform and include that analysis. The ALJ should consider those issues on remand. See George v. Astrue, 451 F. App'x 767, 768-69 (10th Cir. 2011) (noting it is possible plaintiff's mental impairments will have no impact on his ability to work but court did not know upon review of ALJ's decision what ALJ thought because he made no factual findings on that issue and therefore remand was required).

41, 758. This error mandates remand.[8] See Hammond, 735 F. Supp. 3d at 579; Pedro G., 2025 WL 559809, at *6.

## 2. **Step five**

In addition to failing to consider and assess Plaintiff's mental impairments—severe or not—at step two, the ALJ did not analyze what effect these impairments had on Plaintiff's RFC.

At step five, an impairment must be medically determinable (but does not have to be severe) to be considered in the RFC assessment. See Rutherford v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005); Diciano v. Comm'r of Soc. Sec., No. 18-cv-17383, 2019 WL 6696523, at *4 (D.N.J. Dec. 9, 2019) (stating RFC assessment considers claimant's medically determinable impairments in combination including those found severe and those deemed not severe at step two) (citation omitted). If an ALJ denies benefits after ignoring at step two a claimant's medically determinable impairment and failing at step five to discuss the medically determinable impairments when determining the claimant's RFC, the decision is not supported by substantial evidence. See, e.g., Friday v. Comm'r of Soc. Sec., No. 20-cv-4504, 2021 WL 3879081, at *4, *7 (D.N.J. Aug. 31, 2021) (holding ALJ decision was not supported by substantial evidence when ALJ did not mention claimant's medically determinable impairments of TMJ, migraines and anxiety at step two and in RFC determination); Hammond, 735 F. Supp. 3d at 579 (determining ALJ's failure to find claimant's PTSD was severe and, in fact, ignoring it completely at step five despite repeated references in record to diagnosis was not harmless error

---

[8] The Commissioner does not respond in its brief to Plaintiff's assertion that the ALJ did not discuss her mental impairments at step two of the sequential process as required. See Doc. 9, at 1-14; see also Doc. 10, at 3-4.

12

and warranted remand). Courts have required ALJs to address the functional limitations of a claimant because of medically determinable impairments even when evidence in record suggests those impairments do "not impact ordinary conditions of daily life." Hammond, 735 F. Supp. 3d at 580 (quoting Thoenen v. Comm'r of Soc. Sec., No. 21-cv-1101, 2022 WL 3577414, at *4-*5 (N.D. Ohio 2022)).

Even if the ALJ had adequately considered and decided Plaintiff's anxiety and depression were not severe and were only medically determinable impairments, the ALJ failed to discuss or analyze at step five how any of Plaintiff's mental impairments affected her RFC or state they did not affect it at all. R. 37-40. At most, the ALJ discussed the persuasiveness of two medical providers who assessed Plaintiff's limitations. Specifically, the ALJ opined Dr. Edward A. Jonas's opinion was only somewhat persuasive and found the evidence Dr. Jonas referred to— including Plaintiff's mental status exams, treatment, prescriptions, and condition—did not indicate limitations in any domain. R. 37. Additionally, the ALJ decided that Dr. Brendley's opinion finding Plaintiff has mild limitations, in part, based on his mental examination, was not persuasive for other reasons, and therefore the evidence did not demonstrate any limitations in any domain. R. 38. Once again, the ALJ does not mention Plaintiff's anxiety and depression, whether they are medically determinable impairments, and what effect if any they may have on Plaintiff's RFC and her ability work. Like step two, this was also error and requires remand. See Friday, 2021 WL 3879081, at *4, *7; Hammond, 735 F. Supp. 3d at 579; Harmon v. Astrue, No. 10-cv-6781, 2012 WL 94617, at *2 (E.D. Pa. 2012) (stating "even minimal deficits in . . . areas of functioning could impact [claimant's] ability to successfully perform the occupation" of skilled lawyer so including all mental limitations in RFC was "especially important"); see also

Curry v. Comm'r of Soc. Sec., No. 15-cv-7515, 2017 WL 825196, at *5 (D.N.J. March 2, 2017)

(Court cannot weigh evidence or substitute its conclusions for ALJ's or "independently

determine the impact of Plaintiff's mental impairments in combination with her physical

impairments on her RFC."). On remand, the ALJ must redo the step two analysis and consider at

step five all of Plaintiff's medically determinable mental impairments and what limitations, if

any,[9] they may have on her RFC. See, e.g., Susan W., 2023 WL 6366043, at *6.

## VI.    CONCLUSION

For the foregoing reasons, the ALJ erred when she failed to consider Plaintiff's mental

impairments at step two. Moreover, the ALJ failed to discuss and analyze how Plaintiff's mental

impairments, even if they were only medically determinable, affected her RFC at step five. For

these reasons, Plaintiff's request for review (Doc. 1) is **GRANTED** and the case is remanded for

further proceedings consistent with this opinion.[10] An appropriate order accompanies this

opinion.

BY THE COURT:

/s/ Craig M. Straw
CRAIG M. STRAW
U.S. Magistrate Judge

---

[9] An ALJ need not consider an impairment in an RFC that is not medically determinable. See Diciano, 2019 WL 669653, at *4.

[10] The Court does not address Plaintiff's second basis for remand (that the ALJ mischaracterized the mental medical evidence and that error mandates remand) because it finds other grounds to base remand.

14